```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

MAURICE J. CLARK, SR.,         :    CIVIL ACTION
et al.                         :
                               :
        v.                     :
                               :
COLWYN BOROUGH, et al.         :    NO. 12-3668

MEMORANDUM

McLaughlin, J.                                February 12, 2013

This suit arises from alleged constitutional and state law violations committed by Colwyn Borough municipal officials and Colwyn Borough, itself. Each of the five plaintiffs in this action brings claims against the following defendants: Colwyn Borough, Deputy Police Chief Wendell Reed, former Colwyn Borough Police Officer Trevor Parham, and Colwyn Borough Council President Tonette Pray. Only certain of those claims are pertinent to the Court's present decision. In particular, plaintiff Maurice Clark, Sr. brings a § 1983 supervisory liability claim against Reed and Pray for Fourth Amendment deprivations allegedly committed by Parham. The other four plaintiffs, Kevin Banks, Sr., Bryant Sterling, Clinton Craddock, and Wesley Seitz, all of whom were members of the Colwyn Borough Police Department during the events at issue ("Officer Plaintiffs"), assert claims against Parham, Reed, and Pray under the Pennsylvania Whistleblower Law. The defendants have moved to dismiss the above-referenced claims under Federal Rule of Civil

Procedure 12(b)(6). The defendants have also moved to sever into a separate suit all claims brought by the Officer Plaintiffs.[1]

The Court will grant Parham's motion to dismiss the Whistleblower claims brought against him by Sterling, Craddock, and Seitz, but will deny the defendants' motions to dismiss the other Whistleblower claims and Clark's supervisory liability claim. The Court will also deny without prejudice the defendants' motions to sever the claims of the Officer Plaintiffs.

I. Factual Allegations[2]

The following is a brief recitation of only those facts relevant to the instant motions to dismiss.

---

[1] In addition to the Whistleblower Law claims, the Officer Plaintiffs assert § 1983 claims against Colwyn Borough, Reed, and Pray for alleged due process violations relating to their removal from active duty on the police force, and Craddock brings a First Amendment claim against those same three defendants.

Parham has filed his own motion for partial dismissal and for severance, while Colwyn Borough, Reed, and Pray have filed a joint motion to dismiss and sever.

[2] The facts are drawn from the allegations in the Second Amended Complaint ("SAC"). The Court accepts as true all well-pleaded facts in the SAC and draws all reasonable inferences in favor of the non-moving parties, while disregarding any legal conclusions. Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).

A.  <u>Maurice Clark, Jr.</u>

On two separate occasions in the summer of 2011, Trevor Parham, then an officer with the Colwyn Borough Police Department, arrested and placed in jail 64-year-old Maurice Clark, Jr., a private citizen. Parham did so despite lacking a reason to arrest Clark in either instance. In each of the two reports Parham filled out following his arrests of Clark, he falsely stated that Clark had threatened to fight him and cited Clark for disorderly conduct. SAC ¶¶ 13-36.

Parham continued to monitor Clark during the ensuing months. Numerous times during the fall of 2011, Parham drove up and down the block on which Clark lived, sometimes slowing down as he passed Clark's residence and giving Clark "dirty looks." Additionally, shortly after roll call at the police station on November 8, 2011, Parham announced to his fellow officers that, if they saw Clark, they should "lock him up" and that Parham would take care of the paperwork. Other officers who were present understood Parham to mean that they should arrest Clark on sight, whether or not they had justification for doing so. <u>Id.</u> ¶¶ 37, 40, 49-50, 66-67.

Clark complained about Parham's conduct to Colwyn Borough officials, including Deputy Chief Reed and Council President Pray. Reed and Pray failed to discipline Parham for his conduct, though, and even went so far as to take adverse

actions against other officers who attempted to report or stop Parham's improper behavior.  Id. ¶¶ 41, 183.

### B. Officer Plaintiffs

Officers Banks, Sterling, and Craddock were all present when Parham gave his November 8 directive.  Seitz, who was a lieutenant in the department, learned of Parham's instruction at some point after it was issued.  Banks and Sterling both complained to Deputy Chief Reed about the impropriety of Parham instructing other officers to arrest Clark without cause.  They, Craddock, and Seitz also reported other instances of Parham's misconduct to Reed or others in the department.  Id. ¶¶ 49-50, 57, 59, 66-67, 71-74, 87, 104-05, 108, 148, 158.

By that point, the Colwyn Borough Police Department had broken into two factions.  One was helmed by Parham, Reed, and Pray.  Because the Officer Plaintiffs had complained about Parham, they were now viewed as members of the opposition.  After each of the Officer Plaintiffs complained to Reed and others about Parham's misconduct, he was subjected to retaliation by the Parham/Reed/Pray faction and was eventually removed from active duty with the police department.  Id. ¶¶ 51-60, 69-70, 77-81, 88, 134-45, 148, 157-76.

Banks was terminated by the Colwyn Borough Council on December 30, 2011, without prior notice or a hearing.  Two weeks

earlier, Reed had been overheard saying, "Kevin Banks was the cause of the problem, and I will get that little son of [a] bitch anyway I can!!!" On January 10, 2012, Reed then placed Sterling on immediate administrative leave and informed him that this action was being taken because the mayor of Colwyn Borough had ordered an investigation into a traffic stop that Sterling had conducted the previous November. When Sterling spoke to the mayor three days later, however, the mayor told Sterling that he was unaware of any such investigation. On May 30, 2012, Reed similarly notified Craddock that he was being removed from the schedule, and Craddock was suspended without a hearing. Id. ¶¶ 58, 60, 77-79, 143-45 (alteration omitted).

Lieutenant Seitz was terminated after conducting an investigation in late April or early May 2012 into allegations that Parham had tased a minor while in police custody. During a meeting with Pray, Reed, and another Borough Council member that took place after the close of Seitz's investigation, Pray stated that they should not inform the mayor about the tasing incident and that they should downplay it as much as possible. Seitz responded that Parham had engaged in criminal conduct and that he would not participate in any cover-up of such activity. Following that meeting, the Borough Council twice placed Seitz on administrative leave. Each time, the mayor intervened and ordered Seitz to return to duty. On August 2, Pray finally

terminated Seitz without notice or a pre-termination hearing. Id. ¶¶ 149-61, 167-72, 176.

In addition, after Banks lodged his first complaint against Parham, Parham instituted a new "community policing" policy, whereby an officer was assigned to do foot patrol every two hours. Banks was the only officer assigned to foot patrol under this policy. Parham admitted to several other officers that he was punishing Banks with foot patrol because Banks was friends with Clark. When Banks complained to Reed about the foot patrol assignment and Parham's November 8 order, Reed did not take any action in response. Reed later denied Banks' requests for time off without any justifiable reason. Id. ¶¶ 50-54, 57.

## II. Analysis

The defendants assert several arguments in favor of dismissing certain of the plaintiffs' claims. The chief arguments collectively raised in their motions are as follows: (1) Count II, Clark's § 1983 supervisory liability claim against Reed and Pray, should be dismissed because it is redundant of Count III, Clark's claim against Colwyn Borough pursuant to Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978); (2) the Pennsylvania Whistleblower Law claim brought by Banks against Parham, Reed, and Pray should be dismissed as untimely; and (3) Counts VIII, X, XIII, and XV, the Whistleblower claims raised

by the Officer Plaintiffs against Parham, Reed, and Pray, should be dismissed for failure to state a claim. The defendants also contend that all claims asserted by the Officer Plaintiffs should be severed into a separate suit.

The majority of the defendants' arguments are unpersuasive. The only claims that the Court will dismiss are the Whistleblower claims of Sterling, Craddock, and Seitz against Parham. The Court also denies without prejudice the defendants' motions to sever. Each of the defendants' main arguments, as well as ancillary arguments raised in their briefs, is more fully addressed below.

### A. Supervisory Liability Claim Against Reed and Pray

Count II of the SAC alleges that Reed and Pray are liable under § 1983 for Parham's alleged infringement of Clark's Fourth Amendment rights, based on a theory of supervisory liability. The defendants are correct that Count II does not state a claim against Reed and Pray for direct participation in those Fourth Amendment violations.[3] Rather, the SAC contends

---

[3] Although Count II states that Reed and Pray knew of Parham's "tendency to act unlawfully" and "acquiesced in . . . Parham's conduct," the SAC is devoid of any allegations that Reed and Pray were actually aware that Parham would falsely arrest Clark before it happened or knew of the arrests during their occurrence. See SAC ¶¶ 41-42, 182-83. Section 1983 liability predicated on acquiescence in wrongdoing must be coupled with "'actual knowledge'" of the unlawful conduct. Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988)).

-7-

that Reed and Pray are liable, as "policy developers, makers and enforcers," for maintaining inadequate training, hiring, supervisory, and disciplinary procedures and a policy of silencing Parham's critics within the Colwyn Borough Police Department.  SAC ¶¶ 182-83.  Clark claims that these actions inculcated a climate of unlawful conduct within the department and directly led to Parham's illegal arrests of Clark.

Reed and Pray move to dismiss Count II, arguing that it is essentially a <u>Monell</u> claim for maintenance of a policy creating constitutional harm and is, therefore, duplicative of Count III, an explicit <u>Monell</u> claim against Colwyn Borough.  This is an inadequate basis on which to obtain dismissal.  The Court of Appeals for the Third Circuit has stated that individual defendants can, in certain circumstances, be held liable under § 1983 for their role in establishing and maintaining an injury-causing policy, practice, or custom.  <u>A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr.</u>, 372 F.3d 572, 586 (3d Cir. 2004).  The defendants do not cite any authority for the proposition that such a claim may or must be dismissed simply because the complaint also contains a similar or identical claim against a governmental entity.

The closest the defendants come is a citation to <u>Kentucky v. Graham</u>, in which the Supreme Court noted that <u>Monell</u> paved the way for suits seeking damages and injunctive relief

-8-

directly from a local government, thereby obviating the need to bring official-capacity suits against individual officials within the municipality. Borough/Reed/Pray Br. at 9 (citing Graham, 473 U.S. 159, 167 n.14 (1985)). Putting aside that Reed and Pray are being sued in their individual capacities, not their official ones,[4] the fact that Monell made suits against individual policymakers unnecessary does not render such claims non-actionable. Accordingly, the motion to dismiss Count II based on its redundancy with Count III is denied.

### B. Whistleblower Law Claims

Parham, Reed, and Pray move to dismiss the Pennsylvania Whistleblower Law claims brought by the Officer Plaintiffs. They argue that Banks' claim runs afoul of the statutory limitations period and that all four of the plaintiffs fail to state a claim against any of the three defendants.

#### 1. Timeliness of Banks' Whistleblower Law Claim

The Pennsylvania Whistleblower Law states that a civil action for a violation of that statute must be filed "within 180 days after the occurrence of the alleged violation." 43 Pa.

---

[4] See SAC ¶¶ 9, 11. For that matter, the plaintiffs claim in the SAC and clarify in their briefing that they are only suing Parham in his individual capacity. Id. ¶ 10; Pls.' Opp. to Parham Mot. to Dismiss at 19. Parham's motion to dismiss all official-capacity claims against him is, therefore, denied as moot.

Stat. § 1424(a). Parham, Reed, and Pray argue that Banks' Whistleblower claim was not filed within 180 days of his alleged statutory violation: termination from the Colwyn Borough Police Department on December 30, 2011. Banks did not file a Whistleblower claim until June 28, 2012, 181 days after he was released from service.

The plaintiffs respond that, although Banks was terminated on December 30, he did not receive notice of his termination on that date. The SAC alleges that Banks was fired "without notice or a hearing," leaving it unclear when Banks learned of his termination. SAC ¶ 60. Moreover, the plaintiffs offer as an exhibit the minutes of the Colwyn Borough Council meeting at which the Council voted to release Banks from his service on the police force. Although the minutes reflect that a vote was taken to terminate a "probationary police officer," the officer's name is not given.[5] Pls.' Opp. to Borough/Reed/Pray

---

[5] The Court may consider the minutes from the Colwyn Borough Council's meeting on a motion to dismiss, as the minutes appear to be a matter of public record. Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006); 5B Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004).

The plaintiffs also submit an affidavit from Banks, in which he states that he did not actually learn of his termination until January 2 or 3, 2012. The Court may not consider such an affidavit without converting the defendants' motions to dismiss into motions for summary judgment. See Albright v. Virtue, 273 F.3d 564, 570 (3d Cir. 2001). The Court declines to so convert the defendants' motions and will not consider Banks' affidavit in assessing the timeliness of his Whistleblower claim.

Mot. to Dismiss, Ex. 1. The plaintiffs essentially argue that it is impossible to resolve at this stage when Banks could have learned of his termination and it would be premature to dismiss Banks' Whistleblower claim on statute of limitations grounds.

The Court agrees. It is true that the Pennsylvania Whistleblower Law states that an action must be filed "within 180 days after the *occurrence* of the alleged violation," and not 180 days after notice of the alleged violation. 43 Pa. Stat. § 1424(a) (emphasis added). On the other hand, Pennsylvania courts employ the discovery rule, which permits tolling of a limitations period during the time that an injury is undiscoverable through reasonable diligence. Dalrymple v. Brown, 701 A.2d 164, 167 (Pa. 1997); see also Lyons v. Emerick, 187 F. App'x 219, 221 n.3 (3d Cir. 2006) (per curiam). The defendants have not offered any authority addressing, much less rejecting, application of the discovery rule to the 180-day period for filing a Whistleblower suit. Nor has the Court uncovered any such authority on its own. At this point, the Court is not persuaded that the Whistleblower Law is beyond the reach of such an equitable tolling principle.

Considering the allegations in this case, the SAC sets forth plausible grounds for application of the discovery rule to Banks' claim. The assertions in the SAC are consistent with a finding that, even if Banks exercised due diligence, he would not

have been made aware of his termination on December 30, 2011. The defendants' motions to dismiss Banks' claim for failure to comply with the statute of limitations is accordingly denied without prejudice. The defendants may again raise this defense at a later stage of these proceedings.

2. <u>Failure to State a Claim</u>[6]

The Pennsylvania Whistleblower Law states as follows:

> No employer may discharge, threaten or otherwise discriminate or retaliate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because the employee or a person acting on behalf of the employee makes a good faith report or is about to report, verbally or in writing, to the employer or appropriate authority an instance of wrongdoing or waste.

43 Pa. Stat. § 1423(a). The Court rejects the defendants' various challenges to the Whistleblower claims against Reed and Pray, and finds that the Officer Plaintiffs have all stated plausible claims of Whistleblower Law violations against those two defendants. Banks has also made out a viable Whistleblower claim against Parham.

---

[6] In his motion to dismiss, Parham also argues that this Court lacks subject matter jurisdiction over the Whistleblower Law claims of the Officer Plaintiffs. At oral argument, Parham's counsel clarified that he had first made that argument in prior briefing before the Officer Plaintiffs had amended the complaint to include constitutional due process claims. 11/27/12 Hr'g Tr. at 33. He conceded that Parham no longer objected to the Court's jurisdiction to adjudicate the state law Whistleblower counts, only the adequacy of the claims as pled. <u>Id.</u> That being the case, the Court will deny as withdrawn Parham's motion to dismiss those claims based on lack of subject matter jurisdiction.

-12-

The Court will, however, dismiss the Whistleblower Law claims made by Sterling, Craddock, and Seitz against Parham. None of these three plaintiffs alleges that Parham himself engaged in retaliation against him. Despite this obvious defect, the plaintiffs argue that the SAC, when "viewed in a light most favorable to Plaintiffs, establishes that Defendants Pray, Reed and Parham were acting in concert and in furtherance of each other's interests." Pls.' Opp. to Parham Mot. to Dismiss at 18. The plaintiffs have not, however, argued that Pray, Reed, and Parham were part of a conspiracy to violate the Whistleblower Law, such that illegal actions of one may be imputed to the others. It may be, as the plaintiffs contend, that Reed and Pray retaliated out of loyalty to Parham or to benefit him. That does not establish that Parham participated in conduct deemed unlawful by the Pennsylvania Whistleblower Law.

### 3. Punitive Damages

In their briefing, the defendants argued that punitive damages are not available under the Pennsylvania Whistleblower Law and that the plaintiffs' request for such damages should be dismissed. The plaintiffs have given in on this point. See Pls.' Opp. to Parham Mot. to Dismiss at 19; 11/27/12 Hr'g Tr. at 4. The Court will, therefore, grant as uncontested the defendants' motions to dismiss the claims for punitive damages

under that statute.

C. <u>Severance of Claims by Officer Plaintiffs</u>

Finally, the defendants argue that all of the claims asserted by the Officer Plaintiffs should be severed from Clark's claims and brought in a separate suit. The defendants contend that the Officer Plaintiffs' constitutional and Whistleblower claims do not arise out of the same "transactions or occurrences" as those forming the basis for Clark's Fourth Amendment and state law claims, and that they cannot be joined together in one suit under Federal Rule of Civil Procedure 20(a). The Court will deny the defendants' requests without prejudice.

Even if the Court were to sever the claims brought by the Officer Plaintiffs, it would still consolidate discovery in the two cases, which would promote the interests of efficiency and judicial economy. Indeed, at oral argument, counsel for Parham stated that it "might not be a bad idea" to single-track discovery on all claims presently contained in the SAC, and counsel for the other defendants acknowledged that doing so "would be more efficient possibly." 11/27/12 Hr'g Tr. at 28-29. At the very least, the defendants have not persuasively argued that unification of discovery would prove harmful. In fact, the defendants' chief rationale for severance, as articulated in their briefs, is that joint trial of all claims would be unfairly

prejudicial and confusing.  Those concerns are not yet ripe. There is time to revisit the issue of separate trials if and when this action advances to that stage.

III. Conclusion

For the foregoing reasons, the defendants' motions to dismiss and for severance are granted in part and denied in part. An appropriate order issues separately.